Gzj kdkv'E

# 2025-03854 / Court: 269

CAUSE NO. _____

| | | |
|---|---|---|
| **JOHN DIMECH,** | § | **IN THE DISTRICT COURT** |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **VS.** | § | |
| | § | **OF HARRIS COUNTY, TEXAS** |
| **SHELL TRADING (US) CO.,** | § | |
| | § | |
| **Defendant.** | § | **_____ JUDICIAL DISTRICT** |

## PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES JOHN DIMECH ("Dimech" or "Plaintiff"), and files this his Original Petition against Defendant SHELL TRADING (U.S.) CO. ("STUSCO") would respectfully show the Court as follows:

### DISCOVERY CONTROL PLAN

1.      This case should proceed as a level 2 case under Rule 190.3 of the Texas Rules of Civil Procedure.

### PARTIES

2.      Plaintiff.  John Dimech, during all relevant periods of time involved in this matter, worked for Defendant in Harris County, Texas, where he resided for more than ten years. Dimech is a citizen of Australia, who transferred to Texas as an intra-company visa holder lawfully who was authorized to work in the United States. During the course of his time in the U.S., Dimech became a permanent resident.

3.      Defendant.      Shell Trading (U.S.) Co.  is a Delaware corporation with its principal place of business in Houston, Texas at 1000 Main St., Suite 1700, Houston, Texas 77002. STUSCO

is a business unit of Shell, plc ("Shell"), which is a foreign corporation that is based in the United

Kingdom. STUSCO can be served through its Registered Agent for Service of Process, CT

Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

**VENUE**

4.      Venue is proper in Harris County, Texas because the acts complained of occurred, in

whole or in part, in Harris County, Texas.

**JURISDICTION**

5.      Jurisdiction is proper in this Court because the damages are within the jurisdictional

limits of the Court.

6.      This Court has jurisdiction over the Defendant because the acts complained of in this

lawsuit took place within the state of Texas.

**FACTS**

Background

7.      Defendant STUSCO is the U.S. corporation that acts as the single oil trading market

interface for Shell, plc, formerly known as Royal Dutch Shell.  It focuses on petroleum, petroleum

by-products, and petroleum derivatives. STUSCO has an extensive portfolio of products and

services associated with crude oil and product trading, including shipping services.

8.      Plaintiff Dimech had a lengthy and decorated career at STUSCO eventually serving

as the Company's President from 2016 through 2021 and also serving as General Manager North

America Crude Oil Trading (2010 through 2021).

9.      Dimech's more than 20-year tenure with Shell Trading (30 years with Shell) was

marked by excellent performance and dedication to the Company and resulted in him becoming the

President of one of Shell's most profitable entities.

Certified Document Number: 118517992 - Page 2 of 11

10.     Due to his lengthy tenure in the leadership of STUSCO, Dimech (a) helped to shape the formalization of, (b) calculated bonuses under, and (c) administered the Shell Trading Commercial Bonus Program ("CBP"). The CBP is a significant component of compensation for STUSCO's commercial employees. Dimech administered the CBP for groups with significant number of employees in North America (80 employees), as well as Singapore (18 employees) for 15 years.

11.     Due to his experience as both an administrator and beneficiary of the CBP, as well as his tenure and seniority, Dimech also was significantly involved in the most recent internal comprehensive review of the CBP in 2018. Consequently, he is very familiar with the bonus program's mechanics.

12.     Defendant determines the annual bonus (comprising cash and conditional components) portion of its commercial personnel pursuant to a rigorous process. Per the CBP, the annual bonus component is made on the basis of certain key factors pertaining to the individual, namely:

(a)     direct business profitability;

(b)      the individual's performance rating which encompasses a suite of behavioral dimensions (compliance, control, leadership, collaboration, etc.),

(c)      the overall Shell Trading profitability, and

(d)     prevailing market conditions for traders and commercial personnel in the relevant human-resource market.

13.     The significance that Shell attributed to the first factor – direct business profitability – was evident from the Company's frequently communicated mantra that "every dollar made contributes to the bonus funding pool equally" and was borne out by the historical fact pattern.

Certified Document Number: 118517992 - Page 3 of 11

14.     During 2020, Shell's leadership consistently reiterated and reinforced this position to Mr. Dimech and his peers, and furthermore, directed him to cascade this message to his reports, when there was so much turbulence and uncertainty in the global energy market due to the world-wide impact of the COVID-19 pandemic.

15.     Shell's executives' constant confirmation that the CBP's administration would not be altered during 2020 was key to Dimech remaining in Defendant's employment through the challenges to global commerce and personal safety resulting from the coronavirus pandemic. Dimech indicated his acceptance of these terms by continuing to not only be employed by Defendant but to also give his highest level of performance knowing that Defendant had assured him (as well as his team) that his efforts would be financially rewarded in the same manner as they had in the past based upon the criteria that had been considered in previous years.

16.     In addition to agreeing to these terms of employment and compensation, Dimech further relied upon his compensation being paid consistent with past practices, per Defendant's representations and re-confirmations. Given his lengthy experience with Defendant, he had no reasonable basis for doubting that his compensation would be treated differently.

17.     Despite these representations and the understanding between Defendant and Dimech based on the historical pattern of CBP payments which had been repeatedly re-confirmed and reinforced, Shell violated the established process and denied Mr. Dimech a substantial portion of the compensation that he was owed for his CBP component for the 2020 financial year. The amount Defendant paid Dimech for his CBP component of his compensation for the 2020 financial year represented a material and unjustified departure from the long-established contract, all prior historical bonus payments made to him, and the representations that compensation for 2020 would be calculated in the same manner as in past years.

4

18.     While the amount of Dimech's past CBP payments had been -- consistent with the CBP – commensurate with his business contribution and performance rating and the other factors listed above, Defendant's CBP payment to Dimech for the 2020 financial year was practically the same as his previous year's annual bonus despite significant changes in the underlying factors, including:

(a)     In 2019, the North American crude business had set a record for the greatest contribution to Shell's profit (Net Income Before Interest and After Tax ("NIBIAT")). Yet, in 2020, this business's profit contribution doubled that record-setting year's performance. Dimech's first-hand and direct leadership of the business and the team's execution of his strategy were the reasons for such spectacular success.

(b)     On an individual level, Mr. Dimech's performance ranking increased from *Strong* (70-80% of employees) to *Higher* (top 10-15% of employees) due to increased collaboration across the Company and taking strong and robust commercial, legal and compliance positions.  He was also deemed to have demonstrated outstanding leadership.

(c)     Market forces remained strong as evidenced by the resignation of one of the most senior leaders in the Dimech's leadership team and the need for him to cover her and his own roles simultaneously for several weeks.

(d)     The pool of funds made available to Dimech's team for CBP allocations in 2020 was increased by 30% from the CBP pool for 2019 reflecting that the value of Dimech's team's work was of significant value to the overall Company.  And the mechanics of the allocation process within Mr. Dimech's team remained consistent with prior practice.

(e)     There were repeated communications and assurances by Shell Trading executives throughout 2020 that there would not be a change to the traders' Commercial Bonus Program.

19.     Defendant's departure from its stated, historical, and agreed upon factors in determining the CBP for Mr. Dimech is evident in the lack of correlation or proportionality of Dimech's 2020 Bonus payment in comparison with the history of the most recent previous years as set forth in the following table (in order to avoid any potential concerns regarding potential

5

confidentiality, the term "units" has been used for indicative purposes instead of an unstated dollar

amount):

| Factor | 2019 | 2020 |
|---|---|---|
| Performance Ranking | Strong | Higher |
| Dimech's Business Unit Profitability | 1 unit | 1.98 units |
| Dimech's Business Unit Bonus Pool[1] | 1 unit | 1.30 units |
| Dimech's CBP payment | 1 unit | 1.08 units |

20.     As can be seen, with regard to each key metric for Dimech's CBP payment the level

of increase for the 2020 financial year relative to 2019 was of a substantial percentage: performance

ranking increase from being merely within the general 80% to a ranking within the top 15% of all

employees; the team bonus pool increased by 30%; and the direct business profitability increased

by over 98%. Yet, Dimech's CBP payment was not correlated to these outstanding numbers, as it

was only increased by approximately 8%.

21.     Had the factors for change in year-to-year profitability and increase in performance

ranking been applied in the manner that had previously been used for CBP calculation, Dimech's

Commercial Bonus Program payment would have been multiples of the amount of his 2019 CBP

payment. This represents a shortfall of approximately $29,400,000.00 for the 2020 financial year.

22.     While this figure is a substantial amount in compensation, it should be noted that it

is only a small fraction of the *profits* for the Company for which Dimech was responsible during

the 2020 financial year.

---

[1] The 2020 figure includes retention payments made to a supervisor who resigned.

Certified Document Number: 118517992 - Page 6 of 11

23.    As Defendant is part of the Shell plc family of companies, Dimech was required to dispute this misaligned allocation for the CBP portion of his compensation for the 2020 financial year through Shell's internal dispute resolution, RESOLVE.

24.    Under the RESOLVE process, a mediation was scheduled on November 8, 2021 through the American Arbitration Association ("AAA")'s International Centre for Dispute Resolution.

25.    Dimech approached this mediation believing that Defendant would likewise approach the process of internal dispute resolution with good faith and mutuality and, accordingly, indicated that he was willing to resolve his dispute for a fraction of the amount that he was entitled to receive per the CBP had the represented and agreed upon factors been used.

26.    Unfortunately, such belief proved to be overly optimistic as Defendant, through its counsel, proved unwilling to engage in a dialogue, provide a basis for their position in refusing to meet its compensation obligations to Dimech, or to negotiate or even to communicate with Dimech and his attorney in a manner directed to resolve the dispute.

27.    Similarly, Dimech's last-ditch attempt in March 2023 to resolve his claims against Defendant informally to avoid having to proceed with formal legal action were met with a similar response from Defendant.

**FIRST CAUSE OF ACTION**
**(Breach of Contract)**

28.    Plaintiff incorporates the allegations stated above as if fully set forth herein.

29.    The CBP was a material term of Defendant's agreement with Plaintiff about his continued employment with the Company.

Certified Document Number: 118517992 - Page 7 of 11

30.     As described above, Defendant breached the terms of its agreement with Plaintiff by refusing to pay him the full CBP amount to which he was entitled.

31.     Defendant's breach of its agreement with Plaintiff has caused Dimech to suffer monetary damages as he has not received the amount of bonus that he should have per the CBP.

## SECOND CAUSE OF ACTION
### (Fraud)

32.     Plaintiff incorporates the allegations stated above as if fully set forth herein.

33.     As described above, Defendant made misrepresentations to Plaintiff, including but not limited to, representations to Dimech that Defendants would pay under the CBP in the same manner and per the same criteria as it had in the past.

34.     Such misrepresentations were material and at the time that they were made, known to be false. Further, they were made with the intent that the representations would be acted upon.

35.     Plaintiff justifiably relied upon Defendant's misrepresentations to his detriment, including but not limited to, remaining with Defendant and engaging in extraordinary efforts at the cost of his personal life and health under the belief that such efforts would not only benefit the Company, but that such efforts would be compensated in the same manner as they had in the past.

36.     As a result of Defendant's misrepresentations and Plaintiff's justifiable reliance on them, Plaintiff has been damaged.

37.     Defendant knowingly engaged in these actions with malice and/or with reckless indifference to the rights of Plaintiff.

## THIRD CAUSE OF ACTION
### (Fraudulent Inducement)

38.     Plaintiff incorporates the allegations stated above as if fully set forth herein.

Certified Document Number: 118517992 - Page 8 of 11

8

39.	As described above, Defendant made misrepresentations to Plaintiff, including but not limited to, representations to Dimech that Defendant would pay under the CBP in the same manner and per the same criteria as it had in the past.

40.	Such misrepresentations were material and at the time that they were made, known to be false. Further, they were made with the intent that Dimech would continue in his employment relationship with Defendant, specifically by serving as Defendant's President and General Manager -North America Crude Oil Trading.

41.	Plaintiff justifiably relied upon Defendant's misrepresentations to his detriment, including but not limited to, remaining in his leadership roles with Defendant under the belief that he would be compensated in the same manner as he had been in the past.

42.	As a result of Defendant's misrepresentations and Plaintiff's justifiable reliance on them, Plaintiff has been damaged.

43.	Defendant knowingly engaged in these actions with malice and/or with reckless indifference to the rights of Plaintiff.

## PRAYER

44.	Plaintiff John Dimech respectfully prays that Defendant Shell Trading (US) Co. be cited to appear and answer herein and that upon a final hearing of the cause, that judgment be entered for Dimech against Defendant and that Dimech be awarded the following:

    a.	The full compensation Defendant should have paid him per the terms of its contract with Dimech, namely the value of the bonus for 2020 as calculated per the CBP as applied in previous years;

    b.	Reasonable attorneys' fees and expenses;

Certified Document Number: 118517992 - Page 9 of 11

c.      Compensatory damages; and,

d.      Punitive damages.

Plaintiff further requests all other relief to which he is justly entitled, whether in law or in equity.

Respectfully submitted,

LAW OFFICE OF DAVID J. QUAN

By:     _/s/_ _David J. Quan_____
David J. Quan
Texas Bar No. 16422300
5444 Westheimer Road, Suite 1700
Houston, Texas 77056
Telephone: (713) 225-5300
Facsimile: (713) 625-9222
dquan@davidquanlaw.com

ATTORNEY FOR PLAINTIFF
JOHN DIMECH

Certified Document Number: 118517992 - Page 10 of 11

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

David Quan on behalf of David Jin-Mun Quan
Bar No. 16422300
dquan@davidquanlaw.com
Envelope ID: 96384021
Filing Code Description: Petition
Filing Description: Plaintiff's First Original Petition
Status as of 1/21/2025 8:16 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| David Quan | | dquan@davidquanlaw.com | 1/17/2025 11:56:03 PM | NOT SENT |



I, Marilyn Burgess, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   January 21, 2025

Certified Document Number:        118517992 Total Pages:  11

Marilyn Burgess, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 51.301 and 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**