# Exhibit A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **JOHN DIMECH,** | § | |
| | § | |
| **Plaintiff,** | § | **Civil Action No. 4:25-cv-252** |
| | § | |
| **v.** | § | (Removed from the 269th Judicial District, |
| | § | District Court of Harris County, Texas, |
| **SHELL TRADING (US) CO,** | § | Cause No. 2025-03854) |
| | § | |
| **Defendant.** | § | |
| | § | |

## DECLARATION OF ERIN VERDON

1.     "My name is Erin Verdon. I am the Vice President of Human Resources for Shell Trading and Supply, which is the network of Shell companies engaged in trading commodities. I am over eighteen years of age, of sound mind, have never been convicted of a felony, and am competent in all respects to make this declaration.

2.     John Dimech worked for Defendant Shell Trading (US) Co. ("STUSCO") in Houston, Texas as the General Manager of Trading and Supply until July 2021. In July 2021, Mr. Dimech relocated from Houston, Texas to Australia.

3.     As a member of the trading organization, Mr. Dimech participated in Trading and Supply's Conditional Bonus Plan. The plan is governed by the Rules of the Shell Trading Conditional Bonus Plan. On March 31, 2020, Mr. Dimech was awarded a bonus under the Conditional Bonus Plan, which was memorialized in a 2020 CBA Award Certificate. A copy of the 2020 Rules of the Shell Trading Conditional Bonus Plan was provided to Mr. Dimech when Mr. Dimech was issued his 2020 CBA Award Certificate.

4.     The Conditional Bonus Plan is managed by a Bonus Oversight Committee comprised of current Shell executives, including myself. The key members of the Bonus Oversight Committee reside and work in London, England.

5.     Attached to this declaration are STUSCO and Trading and Supply business records, including the 2020 Rules of the Shell Trading Conditional Bonus Plan (Exhibit A-1) and Mr. Dimech's 2020 Conditional Bonus Award Certificate (Exhibit A-2). I am a custodian of records for Trading and Supply and am familiar with the manner in which its records are created and maintained by virtue of my duties and responsibilities. The records that are referenced in Exhibit A-1 and A-2 are true copies of the originals. It is the regular practice of the company to make these types of records at or near the time of each act, event, condition, or opinion set forth in the record. It is the regular practice of the company for these types of records to be made by, or from information transmitted by, persons with knowledge of the matters set forth in them. It is the regular practice of the company to keep these types of records in the course of regularly conducted business activity.

I declare under penalty of perjury that the foregoing is true and correct."

Executed on February 10, 2025.

Erin Verdon

# Exhibit A-1



# ROYAL DUTCH SHELL PLC

Rules of the Shell Trading Conditional Bonus Plan

Amended for Awards granted in 2020



# Table of Contents

| Contents | Page |
|---|---|
| Definitions | 3 |
| 1 Granting Awards | 4 |
| 2 Form of Awards | 5 |
| 3 No transfer of Awards | 5 |
| 4 Vesting of Awards | 6 |
| 5 Consequences of Vesting | 6 |
| 6 Currency | 6 |
| 7 Leaving employment | 6 |
| 8 Death | 7 |
| 9 Clawback and malus | 8 |
| 10 Withholding of tax | 8 |
| 11 Relationship with terms of a Participant's employment | 9 |
| 12 General | 10 |
| 13 Changing these Rules | 11 |
| 14 Governing law and jurisdiction | 11 |
| 15 Language of the Rules | 12 |
| 16 Section 409A of the US Internal Revenue Code | 12 |

# Definitions

In these Rules:

"Adjustment Event" means an event by virtue of which Rule 9 applies, which will be set, in relation to each Award, by the Committee under Rule 1.5;

"Award" means any award made under these Rules;

"Award Certificate" means a certificate evidencing an Award;

"Award Date" means the date which the Committee sets for the grant of an Award;

"Committee" means the Bonus Oversight Committee or such other person or body to whom the Committee delegates any function under these Rules;

"Company" means Royal Dutch Shell plc;

"Control" has the meaning given to it by section 995 of the Income Tax Act 2007;

"Directors" means the board of directors of the Company;

"Eligible Employee" means any Trading Commercial Employee. No Awards under the Plan may be made to Directors or to any persons discharging managerial responsibility at the Company ("PDMR"s);

"Group" means:
(a)     the Company; and
(b)     its Subsidiaries from time to time;

"Member of the Group" means any of the Company or its Subsidiaries from time to time;

"Participant" means a person holding an Award or his/her personal representatives;

"Performance Condition" means any performance condition imposed under Rule 1.3;

"Performance Period" means the period in respect of which a Performance Condition is to be satisfied;

"Plan" means the Shell Trading Conditional Bonus Plan as set out in these Rules but subject to any alterations or additions made under Rule 13;

"Qualifying Date" means the date set by the Committee under Rule 1.5.3 and, if not set by the Committee, shall be the third anniversary of the Award Date;

"Rules" means these rules (including any schedules) as amended from time to time;

"Shell Trading" means that part of the Group controlled by the Company which is regarded by the Committee as being Shell Trading from time to time;

"Subsidiary" means a company which is a subsidiary of the Company within the meaning of Section 736 of the Companies Act 1985;

"Trading Commercial Employee" means any employee of a Member of the Group who is determined as such by the Committee for the purposes of this Plan; and

"Vesting" means a Participant becoming entitled to have a payment made to him/her subject to these Rules.

# 1 Granting Awards

1.1 **Selection of Participants**

The Committee may grant an Award to any Eligible Employee on such terms (subject to these Rules) as it may determine. Not all Eligible Employees will be made an Award. The Committee will select which Eligible Employees will be made Awards and will determine the size of those Awards and the terms of those Awards. The selection criteria, the size of the Awards made and the terms of the Awards made may change from time to time.

1.2 **Timing of grant**

The Committee may decide to grant Awards at any time.

1.3 **Performance Conditions**

When granting an Award, the Committee shall make its Vesting conditional on the satisfaction of one or more conditions linked to performance. Any Performance Condition may provide that an Award will lapse to the extent it is not satisfied.

The Committee may, acting reasonably and in good faith, change a Performance Condition if the Committee considers it appropriate but not so as to make the Performance Condition materially more difficult to satisfy.

Notwithstanding the above, the Committee, acting reasonably and in good faith, has discretion to adjust (including, for the avoidance of doubt, a reduction to zero) the extent to which any Award Vests if it considers that:

(i) such Vesting level does not reflect the wider financial or non-financial performance of Shell Trading or the Participant over the Performance Period;

(ii) such Vesting level is not appropriate in the context of circumstances that were unexpected or unforeseen at the Award Date; or

(iii) there exists any other reason why an adjustment is appropriate, taking into account such factors as the Committee considers relevant.

1.4 **Other conditions**

The Committee may impose other conditions when granting an Award. Any condition may provide that an Award will lapse to the extent it is not satisfied.

The Committee may, acting reasonably and in good faith, waive or change a condition if the Committee considers it appropriate but not so as to make the condition materially more difficult to satisfy.

163503_1_DSS/000192/001916

1.5 Other terms to be set on grant
When granting an Award, the Committee will decide:

1.5.1 the notional amount of the Award;

1.5.2 any Performance Condition or other condition(s);

1.5.3 the Qualifying Date, which shall not normally be earlier than the third anniversary of the earlier of:

(i) the Award Date; or

(ii) the start of the Performance Period;

1.5.4 the Award Date;

1.5.5 the currency of the Award;

1.5.6 the rate of interest, if any, to be paid in any circumstances in which the notional amount of an Award is to be paid; and

1.5.7 any Adjustment Events which will apply to the Award (see Rule 9)

# 2  Form of Awards

2.1 Documentation of Awards
Awards will be granted in any manner which is legally enforceable in the relevant jurisdiction.

Each Participant will be informed of the terms and conditions of the Award (to the extent that they are not set out in these Rules) as soon as practicable after the Award Date.

2.2 No payment
A Participant is not required to pay for the grant of any Award.

2.3 Acceptance of Award
For an Award to be valid, the Participant must accept the Award and the terms and conditions upon which the Award is being granted. The Award Certificate will set out the manner in which the Participant must accept the Award, as well as the timeframe for doing so. If the Participant does not accept the Award in the manner and during the timeframe set out in the Award Certificate, the Award will be deemed never to have been granted.

# 3  No transfer of Awards

An Award and any rights in respect of it are personal to the Participant and only the Participant may enforce those rights. No Award or any rights in respect of it can be transferred, pledged, encumbered, assigned or otherwise disposed of.

A Participant must not create, buy or sell any derivative instrument involving an Award. If an Award or any rights in respect of it are transferred, pledged, encumbered, assigned or otherwise disposed of, or if such a derivative instrument is created, bought or sold, the Award will lapse.

This Rule 3 does not apply to the transmission of an Award on the death of a Participant to his/her personal representatives.

# 4 Vesting of Awards

Except where Rules 7 to 9 apply, an Award shall Vest on the latest of the following:

(a)       the date on which the extent to which the Performance Condition(s) or other condition set under Rule 1.4 is satisfied or waived has been determined; or

(b)       the Qualifying Date.

To the extent that an Award has not lapsed or Vested on that date, it will lapse on that date.

# 5 Consequences of Vesting

The Committee will procure that cash is delivered to or to the order of the Participant. Such delivery will be made as soon as reasonably practicable and will normally be made within 45 days of the date of Vesting provided, however, that such delivery will be made not later than (a) where Rule 7.2.2(a), 7.3 or 8 applies, March 15 of the calendar year following the calendar year in which the cessation (Rule 7.2.2(a) or 7.3) or death (Rule 8) occurs and (b) in all other cases, March 15 of the calendar year following the calendar year in which the relevant Qualifying Date occurs.

# 6 Currency

The Committee will set the currency for the Award. The Committee may in its absolute discretion make payment in respect of an Award in either the currency set at the time of the Award or in any other currency.

# 7 Leaving employment

7.1     General Rule
The Award is used by Members of the Group as, among other things, an employment retention tool. If a Participant either (a) ceases to be an employee of a Member of the Group or (b) provides or receives notice of termination of employment with a Member of the Group, in either case before the Qualifying Date, his/her Award will lapse on the earlier of (a) the date of termination of employment or (b) the date on which notice is given or received (as appropriate) and, unless notice of termination is rescinded and the Committee agree to reinstate the Award, the Participant will receive no payment whatsoever in relation to the Award except as otherwise provided in this Rule 7 or Rule 8.

7.2     Exceptions to the general rule

7.2.1     In the case of termination of employment because of retirement as determined by the Committee (which determination may take into consideration, among other items, local laws, regulations or policies), disability, injury, ill-health or redundancy, the Award will not lapse and will instead continue and vest in accordance with Rule 4, provided however that the Award (save for the notional amount of the Award) will, unless the Committee decides otherwise, be prorated to reflect the time which has elapsed between the beginning of the Performance Period and the date of termination of employment. In addition, in relation to Participants for whom the United States of America is their base country, termination by reason of retirement shall include any individual who qualifies for retention of certain long-term incentives under US HR Policy by virtue of the individual attaining at least age 60 and five or more years of Shell service at the time of termination of employment.

7.2.2    In the case of a termination of employment that is not covered by 7.2.1 where the Committee has consented to the reason for such termination (such consent to be given within 14 days after termination of the Participant's employment), the Award will not lapse and instead, in the sole discretion of the Committee, one of the following apply:

(a)    The notional amount of the Award will be paid within 45 days of the termination of employment.

(b)    The Award will continue and will vest in accordance with Rule 4 but he Award will (save for the notional amount of the Award) be prorated to reflect the time which elapsed between the beginning of the Performance Period and the date of termination of employment.

(c)    The Award will continue and will vest in accordance with Rule 4.

7.3    Sale of employer

7.3.1    Subject to Rule 7.3.2, if a Participant ceases to be an employee of a Member of the Group by reason of:

(i)    the Participant's employing company ceasing to be under the Control of the Company or a Member of the Group; or

(ii)    a transfer of the undertaking, or the part of the undertaking, in which the Participant works to a person which is neither under the Control of the Company nor a Member of the Group,

and Rule 7.2 does not apply, his/her Award will Vest on the date of termination of employment to the extent that the Performance Condition is satisfied up to the date of cessation and lapse as to the balance. The Committee will determine the extent to which the Performance Condition has been satisfied in the manner specified in the Performance Condition or, if this is not specified in the Performance Condition, in such manner as it considers reasonable.

7.3.2    Where this Rule 7.3 applies and to the extent that the Committee determines that equivalent rights have been granted or offered to the Participants, then the Awards will not Vest under this Rule to the extent that the Committee so determine. To the extent that the Committee determines that any Awards do not Vest under this Rule then they will lapse.

7.4    Meaning of "ceasing to be an employee"
For the purposes of this Rule, a Participant will be treated as continuing to be an employee of a Member of the Group:

7.4.1    if he is either an employee or a director of any Member of the Group; or

7.4.2    if he recommences employment with or becomes a director of a Member of the Group within 7 days of ceasing to be an employee of a Member of the Group.

# 8   Death

If a Participant dies before the Qualifying Date, then the Award will vest on the date of death and the Participant's personal representatives will be paid in cash an amount equal to the notional amount of the Award plus, if determined by the Committee in their absolute discretion, an amount representing a prorated portion of growth to reflect the time which has elapsed between the beginning of the Performance Period and the date of death.

# 9 Malus and Clawback

9.1 Effect of Adjustment Event

If the Committee determines that an Adjustment Event has occurred, it may decide that one or more of the following will apply to one or more of a Participant's Awards:

9.1.1 The notional amount of the Award will be reduced.

9.1.2 The Award will lapse wholly or in part.

9.1.3 Additional Performance Conditions or other conditions specified by the Committee will be imposed on Vesting of the Award.

9.1.4 The Participant will be required to pay to or to the order of the Company an amount up to the amount of any cash he has been paid in respect of an Award.

9.2 Application of this rule

9.2.1 For the avoidance of doubt, rule 9.1 can apply in relation to a Participant's Award:

(i) before or after the Participant has ceased to be an employee of a Member of the Group;

(ii) whether the Adjustment Event occurred before, after or while he was an employee;

(iii) whether the Adjustment Event occurred before or after the grant or Vesting of the Award;

(iv) (except where the Adjustment Event specifically refers to the Participant's conduct) whether or not the Participant was responsible for or accountable for the Adjustment Event;

(v) whether or not Members of the Group have suffered a financial loss as a result of the Adjustment Event.

9.2.2 The Committee may decide that Rule 9.1.4 will only apply for a period of time, prescribed by the Committee from time to time, after the receipt of the cash amount in respect of the Award by the Participant.

9.2.3 Where rule 9.1.4 applies, the Committee may decide that the amount to be paid will be reduced by reference to any income tax or social security contributions paid by or withheld for the Participant in respect of the Award.

# 10 Withholding of tax

The Company, the Committee, any employing company or trustee of any employee benefit trust may withhold such amount and make such arrangements as it considers necessary to meet any liability to taxation or social security contributions (whether real or hypothetical) in respect of an Award.

163503_1_DSS/000192/001918

# 11 Relationship with terms of a Participant's employment

(a)     For the purposes of this Rule 11, "Employee" means any person who is or will be eligible to be a Participant.

(b)     This Rule 11 applies during an Employee's employment and after the termination of an Employee's employment, whatever the circumstances of such termination.

(c)     Nothing in the Rules or in the terms of or the practice of granting Awards forms part of an Employee's contract of employment. The rights and obligations arising from the employment relationship between the Employee and any Member of the Group are separate from, and are not affected by, these Rules or any Awards made. The grant of an Award does not create any right to, or expectation of, the grant of an Award on the same basis, or at all, in the future.

(d)     Any benefits received under these Rules are not pensionable and do not affect pension benefits or any other employee benefits in any way except as may be otherwise provided in the terms of any applicable pension or other benefit plan.

(e)     Without prejudice to an Employee's right in respect of an Award subject to and in accordance with the express terms of these Rules and any Performance Conditions and/or any other condition set under Rule 1.4, no Employee has any right to have any decision or discretion exercised in a particular manner (or at all).

(f)     Without prejudice to an Employee's right in respect of an Award subject to and in accordance with the express terms of these Rules, any Performance Conditions and/or any other condition set under Rule 1.4, no Employee has any right to compensation resulting from:

   (i)     any loss or reduction of any rights or expectations under these Rules in any circumstances (including termination of employment whatever the circumstances of such termination);

   (ii)    any exercise of a discretion or a decision taken under these Rules, or any failure to exercise a discretion or take a decision;

   (iii)   the operation, suspension, termination or amendment of these Rules.

(g)     Any and all discretions, decisions or omissions relating to the Award may operate to the disadvantage of the Employee, even if this could be regarded as capricious or unreasonable, or could be regarded as in breach of any implied term between the Employee and his/her employer, including any implied duty of trust and confidence. Any such implied term is excluded and overridden by this Rule 11.

(h)     Awards are granted only on the basis that the Participant accepts all the provisions of these Rules, including in particular this Rule 11.

(i)     Nothing in these Rules confers any benefit, right or expectation on a person who is not an Employee. No such third party has any rights under the Contracts (Rights of Third Parties) Act 1999 to enforce any term of these Rules and the performance condition(s). This does not affect any other right or remedy of a third party which may exist.

# 12  General

12.1  Committee's decisions final and binding

The decision of the Committee, in its sole and absolute discretion, on the interpretation of these Rules or in any dispute relating to an Award or matter relating to these Rules or the terms of any Award will be final and conclusive.

12.2  Regulations

The Committee can make or vary regulations for the administration and operation of these Rules but these must be consistent with its rules.

12.3  Data Protection

By accepting any benefit in respect of an Award, the Participant consents to the holding and processing of personal data provided by the Participant to any Member of the Group for all purposes relating to the operation of these Rules. These include, but are not limited to:

12.3.1  administering and maintaining Participant records;

12.3.2  providing information to trustees of any employee benefit trust, registrars, brokers or third party administrators;

12.3.3  providing information to future purchasers of any Member of the Group or the business in which the Participant works; and

12.3.4  transferring information about the Participant to a country or territory outside the European Economic Area, or outside the country of employment.

12.4  Consents

All Awards and payments will be subject to any necessary consents under any relevant enactments or regulations for the time being in force. The Participant will be responsible for complying with any requirements he needs to fulfil in order to obtain or avoid the necessity for any such consent.

12.5  Exchange Rates

Where it is necessary to make any currency conversion under these Rules, the exchange will be at such rate and at such time as the Committee decides.

12.6  Unfunded Awards

Awards shall be unfunded and no Member of the Group shall be required to segregate any assets which may at any time be represented by an Award. Any liability of any Member of the Group to any person with respect to an Award shall be based solely upon any contractual obligations which may be created by these Rules. No such obligation shall be deemed to be secured by any pledge or other encumbrance on any property of any Member of the Group or funded or secured in any way.

12.7  Indemnification

The Company shall indemnify (or procure that any relevant Member of the Group indemnifies) each Indemnitee to the fullest extent permitted under applicable laws and under the Company's constitution (or other similar documents of the Company), against all or any portion of liability and/or costs and expenses reasonably incurred by such Indemnitee, in connection with, arising out of, or resulting from, any claim, suit or proceeding in which he may be involved by reason of having been an Indemnitee; provided however, no Member of the Group shall be obliged to indemnify any Indemnitee against any liability, costs or expenses in connection with any act or omission to act in respect of which the Indemnitee shall be finally adjudged in any action, suit or proceeding to have been guilty of fraud or wilful misconduct in the performance of his/her duties. "Indemnitee", for the purposes of this Rule 12.7, means an individual who, while an employee or director of any Member of the Group and acting with respect to these Rules, acts as a fiduciary, agent, director of that or any other Member of the Group, or in any other capacity exercises administrative responsibility with respect to these Rules.

163503_1_DSS/000192/001919

12.8 Separate Provisions

Each of the provisions of these Rules is entirely separate and independent from each of the other provisions. If any provision of any Rule is found to be invalid, illegal or unenforceable, in whole or in part, in relation to an Award or a Participant, the provision shall apply to that Award or Participant with whatever deletion or modification is necessary so that the provision is legal, valid and enforceable and, so far as reasonably practicable, gives effect to the commercial intention of the Company.

To the extent it is not possible to delete or modify the provision in whole or in part then such provision or part of it will be deemed, to the extent that it is illegal, invalid or unenforceable, never to have been part of these Rules in relation to that Award or that Participant and to the extent that it is possible to do so, this will not affect the validity or enforceability of any of the remaining provisions of that or any other rule.

12.9 Notices

Any notice or other document which has to be given to a person who is or will be eligible to be a Participant may be delivered or sent by post to him/her at his/her home address according to the records of his/her employing company; or sent by e-mail or fax to any e-mail address or fax number which according to the records of his/her employing company is used by him/her or in either case such other address which the Company considers appropriate.

Any notice or other document which has to be given to the Company or other duly appointed agent under or in connection with these Rules may be delivered or sent by post to it at its registered office (or such other place as the Committee or duly appointed agent may from time to time decide and notify to Participants) or sent by e-mail or fax to any e-mail address or fax number notified to the Participant.

Notices sent by post will be deemed to have been given on the second day after the date of posting. However, notices sent by or to a Participant who is working overseas will be deemed to have been given on the seventh day after the date of posting. Notices sent by e-mail or fax, in the absence of evidence to the contrary, will be deemed to have been received on the day after sending.

# 13  Changing these Rules

13.1 Committee's powers

The Committee may, at any time, change these Rules in any way, including retrospective amendments and amendments to the terms of Awards already made.

13.2 Participant approval

No amendment to the terms of any Award already made which would materially adversely affect the rights of any Participants shall be made without the consent of the Participants holding a majority of Awards affected by the amendment.

13.3 Notice

The Committee may (but need not) give written notice of any changes made to any Participant affected.

# 14  Governing law and jurisdiction

English law governs these Rules and all Awards and their construction. The English Courts have exclusive jurisdiction in respect of disputes arising under or in connection with these Rules or any Award.

# 15  Language of the Rules

The language of these Rules is English. In the event of any conflict, the English language version will prevail.

# 16 Section 409A of the US Internal Revenue Code

It is intended that these Rules reflect a programme of short-term deferral as referenced in Section 409A of the US Internal Revenue Code of 1986, as amended (the "Code"), and the regulations thereunder as in effect from time to time ("Section 409A"), and all provisions of these Rules shall be construed and interpreted in a manner consistent with the requirements for satisfying short-term deferral treatment and avoiding tax or penalties under Section 409A.

Notwithstanding any provision of these Rules to the contrary, in light of the uncertainty with respect to the proper application of Section 409A, the Committee reserves the right to make amendments to these Rules as the Committee deems necessary or desirable to avoid the imposition of taxes or penalties under Section 409A. In any case, the Participant is solely responsible and liable for the satisfaction of all taxes and penalties that may be imposed on or for the account of the Participant in connection with these Rules or any Award hereunder (including any taxes and penalties under Section 409A), and neither the Company nor any affiliate shall have any obligation to indemnify or otherwise hold the Participant harmless from any or all of such taxes or penalties.

163503_1_DSS/000192/001920/i

# Exhibit A-2



# Shell Trading

Your 2020 Conditional Bonus Award



# This document contains your personal Shell Trading Conditional Bonus Plan Award Certificate for 2020.

Please keep it in a safe place for future reference.

It is a condition of this Award that you maintain your online record with your personal contact details.

Failure to do so could result in forfeiture of the Award or a delay in the delivery of any Award.

To accept the Award and the terms and conditions upon which the Award is being granted you must go to the "My Holdings" tab in your Computershare account and click on "Accept" in the "Holding Information" section before 1st May 2020. If you do not accept the Award before this date, the Award will be deemed never to have been granted. If you accept the Award as indicated above, you will receive an automated confirmation via email.

THIS IS YOUR PERSONAL AWARD CERTIFICATE AND SHOULD BE KEPT SAFE FOR FUTURE REFERENCE

## ROYAL DUTCH SHELL PLC

## SHELL TRADING CONDITIONAL BONUS AWARD CERTIFICATE

This Award has been granted subject in all respects to the terms and conditions of this Award Certificate and subject to the Royal Dutch Shell plc ("RDS") Rules of the Shell Trading Conditional Bonus Plan which can be found attached to this Award Certificate ("the Rules"). In the event of any inconsistency between this Award Certificate (or any other communication) and the Rules, the Rules will prevail.

Capitalised words in this Award Certificate, which are not defined in it, have the meaning given to them in the Rules. A hard copy of the Rules can be obtained free of charge by sending an email to TradingBonus@shell.com.

| | |
|---|---|
| Name of holder of Award: | John Dimech |
| Award Currency: | USD |
| Notional Award Amount: | 3060000 |
| Date of Award: | 31 March 2020 |
| Performance Period for the 2020 Award: | 1 January 2020 to 31 December 2022 |
| Qualifying Date: | 31 August 2023 |

1.  Performance Condition

Your 2020 Award is subject to a Performance Condition, described below. The level (if any) of the payment you receive will be between 0% and 200% of the notional amount of the 2020 Award depending on the outcome of the Performance Condition.

At the end of each year within the Performance Period, the profit level for that year will be determined. Profit means NIBIAT plus OC (where "NIBIAT" means Net Income Before Interest After Tax and "OC" means Other Contributions). For the purpose of determining profit, NIBIAT plus OC includes Gas and Power Tolling and excludes Emerging Issues Task Force Adjustments. The figures for NIBIAT and OC will be taken from the Shell Trading business scorecard which is based on the relevant year end results for Shell Trading and will be adjusted by the Bonus Oversight Committee (the "Committee") for (i) risk and (ii) to reflect any reorganisation or restructuring during the Performance Period of the Award (as described further below).

At the end of the three years the average (mean) profit level ("Average Profit") will be calculated. The Average Profit will then be measured against the performance curve for the 2020 Award[1].

This will establish the initial percentage multiplier which will be between 0% and 200%.

The initial percentage multiplier will then be adjusted as appropriate by reference to individual performance ratings in the manner communicated separately. The outcome will also be reviewed by the Committee who have discretion to adjust it (including an adjustment to zero) in circumstances it considers appropriate including, without limitation, an adjustment by reference to individual performance ratings during the Performance Period. This will establish the adjusted percentage multiplier which will be between 0% and 200%.

The adjusted percentage multiplier will then be applied to the notional amount of the 2020 Award.

---

[1] The performance curve that will be applied to your 2020 Award has been determined by the Committee and is included in the 2020 Shell Trading Conditional Bonus Plan Q & A document which has been made available to you with this Award Certificate.

If any of the Shell companies which form part of Shell Trading (as determined by the Committee) are reorganised or restructured at any time during the Performance Period of this 2020 Award in a manner regarded by the Committee as material, then the Committee will make such adjustments as it considers appropriate to the profit level for any individual year within the Performance Period and/or to the Average Profit with the intention that profitability is measured on a like for like basis with the Shell Trading entity at the start of the Performance Period of the Award. The adjusted Average Profit will determine the percentage to be applied to the notional amount of the 2020 Award, so determining the final pay-out.

Examples of the initial percentage multiplier outcome for various performance outcomes over a three year period are as follows (note this is before any adjustment by the Committee by reference to individual performance ratings for example):

| | NIBIAT plus OC (US$bn) | | | |
|---|---|---|---|---|
| | Example 1 | Example 2 | Example 3 | Example 4 |
| 2020 profit | 2.5 | 5.5 | 1.0 | 6.5 |
| 2021 profit | 3.0 | 6.0 | -1.0 | 7.0 |
| 2022 profit | 3.5 | 6.5 | 0.0 | 7.5 |
| Average Profit | 3.0 | 6.0 | 0.0 | 7.0 |
| Final Award | 100% | 160% | 0% | 200% |

## 2. Delivery of vested Award

Any payment to you under this Award will be made net of any applicable withholding or income tax and/or social security shortly after the Qualifying Date (subject to the leaving employment provisions referred to below).

## 3. What happens if you leave the Shell Group?

The Award is used by Members of the Group as, among other things, an employment retention tool. Therefore, if you leave employment with the Shell Group (or if you provide or receive notice of the termination of such employment) before the Qualifying Date, your 2020 Award will lapse. However, the Rules provide certain limited exceptions to the general rule. For example:

a) If your employment ends because of your retirement (as determined by the Committee), disability, injury, ill-health or redundancy, the Award will continue subject to the Performance Condition but any growth element of your Award will be prorated to reflect the time between the beginning of the Performance Period and the date of termination of employment (for avoidance of doubt, the notional amount of the Award will not be pro-rated).

b) If you die before the Qualifying Date, then your personal representatives will receive the notional amount of the 2020 Award plus, if determined by the Committee, a prorated portion representing a growth element of the Award.

If you leave employment with the Shell Group (or if you provide or receive notice of the termination of such employment) for any other reason before the Qualifying Date, the 2020 Award will lapse on the earlier of the date of termination of employment or notice; however, the Committee has discretion to determine otherwise (which may result in a payment of an amount equal to the notional amount of the Award within 45 days of termination, continuation or proration of the Award), having regard to the reason for leaving and any local law or tax requirements.

You should consult the Rules for full details, including the impact of certain business transactions.

4.  Adjustments Events

The Award is subject to the "Adjustment Events" set out below. If the Committee in its sole discretion determines that any of these Adjustment Events has occurred, the Award may be subject to "malus" or "clawback".

"Malus" is an adjustment that is made to the award before vesting. For example, the award might be lapsed in whole or in part, the notional amount of the Award might be reduced or additional conditions or a holding period might be imposed.

"Clawback" is an adjustment to the award after vesting. For example, you may be required to pay back some or all of any payment received under the Award as directed by the Committee.

Each of the following is an "Adjustment Event":

1.  Any of the following become insolvent or otherwise suffer a corporate failure: (a) RDS plc, (b) entities representing a material proportion of the RDS Group or (c) entities representing a material proportion of Shell Trading;
2.  There is a restatement of any relevant financial statements due to material non-compliance with any financial reporting requirement;
3.  The measures and outcomes used in determining the Award granted to you or the payment made to you under this Award were influenced by your misconduct or misconduct through your direction or non-direction;
4.  Shell Trading suffers a material downturn in its financial performance;
5.  The Committee decides that making such a payment would not be sustainable according to the financial situation of Shell Trading as a whole or would not be justified according to the performance of Shell Trading, of the business unit and/or your individual performance;
6.  There is a material breach of any regulation (including Health and Safety, Environment or Compliance) or requirement applicable to Trading & Supply;
7.  There is any serious reputational damage to any Member of the Group;
8.  There is a material failure of risk management;
9.  There is Participant misconduct or material error in performance of duties;
10. You breach any provision of your employment contract which applies after cessation of employment or any provision of an agreement entered into on termination of employment;
11. You committed fraud or dishonesty with respect to any Member of the Group;
12. You willfully damaged the assets of, or engaged in misconduct which, in any material respect, is or was injurious to any Member of the Group;
13. You wrongfully disclosed or used any proprietary or confidential information which is related to the business, properties or affairs of any Member of the Group and the release of which is detrimental in any material respect to the competitive position or goodwill of any Member of the Group;
14. You engaged in any activity which, in any material respect, reasonably constituted a conflict with the interests of any Member of the Group;
15. You breached any business principle or a term of any code of conduct applicable to employees or former employees of any Member of the Group; and
16. Any other exceptional event at the discretion of the Committee occurs.

An Adjustment Event can be determined, and the events that give rise to an Adjustment Event could happen, during or after cessation of employment with a member of the Group.

These provisions do not change the fact that you may be subject to regulations containing clawback provisions, such as SOX, the Dodd-Frank Act or any other applicable legislation.

5.  Adjustments in other circumstances

The Committee retains the discretion to reduce the amount of any payout (including a reduction to zero) to take account of any sabbaticals/period of unpaid leave taken by the Participant (subject to local law and policy requirements).

The Committee retains the right to vary your Award in any way which it considers necessary to comply with the requirements of any applicable law, regulation, code or similar. Such variations may include lapsing the Award in whole or in part, reducing the notional amount of the Award, imposing additional conditions on the Award, payment in shares (or similar capital instruments), increased deferral and/or share retention requirements.

6.  Tax

A personal tax and/or social security liability may arise for you in connection with the 2020 Award. Your employing company may be required to withhold taxes and/or social security on your behalf.

By accepting the 2020 Award, you consent to the Group Tax Equalisation Policy (the 'Policy') which relates to tax equalization under the Shell Group's international mobility policies, and which will be applied if you have been on an expatriate assignment at any point during the performance period until delivery of the vested 2020 Award. This means the 2020 Award will be reduced by hypothetical tax and social security (computed as if you had remained in your base country during the life of the 2020 Award). Further detail on the Policy can be found here. This 2020 Award does not benefit from any special tax treatment. The Shell Group does not warrant that any particular tax treatment will apply.

At the discretion of the Committee, the terms of this 2020 Award or the Rules may be modified or amended to the extent deemed desirable or necessary to minimise or avoid, with respect to RDS or a Member of the Group or one or more Participants, the imposition of tax, penalties or interest under Section 409A of the Internal Revenue Code of the United States of America.

7.  Privacy Notice

This Privacy Notice is supplemental to the Global Privacy Policy - Employees which can be found here:

*Who is responsible for processing the personal data relating to any Awards?*

Shell International Limited on behalf of itself, your employing company (if different) solely or jointly with its affiliates within the Shell group of companies.

*For which purpose do you process the personal data?*

Human resources and personnel management, specifically for the purpose of implementing, administering and managing your participation in the plan. The processing is necessary to comply with a legal obligation to which the relevant Shell company/companies is/are subject such as compliance with local employment laws, tax and social security laws and regulations or where it is necessary for the purposes of the legitimate interests pursued by the relevant Shell company/companies (human resources and personnel management).

*What is the source of the personal data (where did you get it from)?*

The Shell People system and additional information (such as home address and personal email address) directly from you.

*What personal data do you process?*

Name, home address, home and business telephone number, home and business email address, date of birth, social security number or other national identification number, salary, nationality, job title, details of all awards made, cancelled, vested or unvested or outstanding ('the Data').

*Who do you share the Data with?*

Your personal data is exclusively processed for the purposes referred to above (or for a secondary purpose where it is closely related, for example such as storing it) and will only be shared on a strict need to know basis with:

- Other companies within the Shell group of companies; and

- Authorised third party agents, service providers and/or subcontractors of the Shell group including Computershare plc who are the authorised administrators of the Plan/s;

*Who can I contact if I have any queries or concerns?*

Reward Trading, Human Resources, Shell International Trading and Shipping Company Limited, 20 York Road, London SE1 7ND United Kingdom or tradingbonus@shell.com

For additional information, please refer to the Global Privacy Policy - Employees which can be found here:

## 8. Relationship between this Award and your contract of employment

Participation in, and the operation of, the Plan will not form part of or affect your contract of employment or your employment relationship with your employing company, nor will they give you the right to continued employment. Participation in any operation of the Plan does not indicate that you will participate, or be considered for participation, in any later operation of this Plan or other bonus plans. Specific provisions are included in the Rules relating to the exclusions of rights and waiver of claims in relation to the Plan.

## 9. Verbal announcements and/or verbal representations

Verbal announcements and/or verbal representations regarding the 2020 Award and/or any payment are not intended to have, and shall not have, any binding or contractual effect.

## 10.Important Information about your Award

The administrators of these Awards can only keep in contact with you if they have your correct contact details. It is your responsibility to update your details on your Computershare account. If you do not do this, you may not receive critical communications and may miss relevant deadlines. In particular if, for any reason, you adopt a new email address you must inform Computershare. In addition, you may be contacted to provide certain information to enable tax and social security charges to be calculated correctly. If you fail to provide this information before the date on which the 2020 Award vests under the Rules, the 2020 Award will lapse in its entirety unless the Committee, in its absolute discretion, decides otherwise.

It is a condition of this 2020 Award that Participants may not use any personal hedging strategy or take out any kind of insurance to undermine the risk alignment elements of this 2020 Award. If a Participant does take any such action then this 2020 Award may be lapsed, including to zero, by the Committee in its sole discretion.

As previously noted, you must accept the 2020 Award and the terms and conditions upon which the 2020 Award is being granted by going to the 'My Holdings' tab in your Computershare account and clicking on "Accept" in the "Holding Information" section before 1st May 2020. If you do not accept the 2020 Award before this date, the 2020 Award will be deemed never to have been granted. If you accept the 2020 Award as indicated above, you will receive an automated confirmation via email.